UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY CORNER, | |
| Plaintiff, | No. 17 C 8134 |
| v. | Judge Thomas M. Durkin |
| R. ALEXANDER ACOSTA, Secretary of the Department of Labor, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Mary Corner is a member of the American Postal Workers Union Local 7140 - Northwest Illinois Area Local (the "Union"). She filed complaints with the United States Department of Labor claiming violations of Title IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481, during the course of the campaign for the Union's election held on April 24, 2017. The Department investigated and denied Corner's claim in a written decision. *See* R. 24 at 8-11. Corner filed this action against the Secretary of Labor seeking review of that decision pursuant to the Administrative Procedure Act. The Secretary has moved for judgment in his favor. R. 28. For the following reasons, the Secretary's motion is granted.

## Legal Standard

Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA") was enacted "to insure 'free and democratic elections' for union officers."

*Chao v. Local 743, Int'l Bhd. of Teamsters, AFL-CIO*, 467 F.3d 1014, 1016 (7th Cir. 2006) (quoting *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 469 (1968)). Title IV sets minimum standards for conducting union elections and provides the necessary steps for a union member to challenge election procedures. 29 U.S.C. § 482. To initiate such a challenge, a union member must first seek relief through the union, and if not satisfied with that process may file a complaint with the Department of Labor. 29 U.S.C. § 482(a); *Chao,* 467 F.3d at 1017. But the Department may not challenge the election unless investigation confirms that a statutory violation probably affected the outcome of the election and has not been already remedied. *See* 29 U.S.C. § 482(b); *Dunlop v. Bachowski*, 421 U.S. 560, 570 (1975). When the Department receives a complaint but declines to challenge the election, the Department must issue a statement of reasons outlining the essential facts and explaining the reasons for the decision. *See Dunlop,* 421 U.S. at 573-74. The statement of reasons "should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Id.* However, "detailed finding of facts are not required." *Id.*

When the Department decides not to sue, its decision is subject to limited judicial review under the Administrative Procedure Act ("APA"). *Dunlop,* 421 U.S. at 572-7; *Harrington v. Chao,* 280 F.3d 50, 56 (1st Cir. 2002); 5 U.S.C. § 706(2)(A). Typically, cases arising under the APA are resolved by summary judgment based solely on the administrative record. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744-45 (1985). However, when reviewing a LMRDA decision, a court must

2

further limit its review to the statement of reasons provided by the Department. *Dunlop*, 421 U.S. at 572-73. Courts must defer to the Department's factual findings, and may not review a union member's challenges to the factual basis of the Department's decision. *Id*. A court may extend its review beyond the Department's statement of reasons only under exceptional circumstances; for instance, if the Department declared it will not enforce the LMRDA; if the Department completely abrogated its enforcement responsibility; or if the Department assesses complaints in a discriminatory manner. *Id*.

In reviewing a LMRDA decision and determining whether it is necessary to extend review beyond the Department's statement of reasons, the Court must determine "whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id*. The arbitrary and capricious standard "embod[ies] the highest level of deference." *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990). The LMDRA relies on the Department's "special knowledge and discretion" to determine if a union election was in violation of the LMRDA and if the violation affected the outcome of the election. *Dunlop*, 421 U.S. at 571. District courts may not may not substitute their judgment for that of the Department, and must affirm the Department's determination if the statement of reasons provides a "rational and defensible" reason for the decision not to sue. *Id*.

## Analysis

As an initial matter, Corner asks this Court to extend its review beyond the Department's statement of reasons to include the Department's investigatory files. However, there is no indication that the Department abrogated its enforcement responsibility or acted in a discriminatory manner so as to justify such an extended review. Therefore, the Court's review is limited to analyzing the sufficiency of the Department's statement of reasons. *See Dunlop*, 421 U.S. at 573; *see also Corner v. Solis*, 380 Fed. App'x 532, 535 (7th Cir. 2010).

Corner's complaints primarily concern the Union's decision to provide notice of the election to its members using the Union's newspaper. Corner makes the following arguments that the statement of reasons is insufficient: (1) it was improper for the Union to use its newspaper to provide notice to members about the nominations because the Union had not distributed the newspaper by mail in several years; (2) use of the newspaper favored incumbent candidates; and (3) use of the newspaper was an unlawful expenditure of Union funds. In addition to issues with use of the newspaper, Corner also claims that the Union improperly permitted two candidates to run even though they were ineligible for failure to pay dues. The Court addresses each argument in turn.

### 1. Improper Notice

Corner argues that the Union newspaper was an improper method of providing notice under the LMRDA because the newspaper had not been distributed by mail in several years. R. 24 ¶¶ 11-15; R. 31 at 9. In response, the Secretary cites regulation

4

29 C.F.R. § 452.100, which provides that the notice requirement may be satisfied by publishing notice of an election in the organization's newspaper and mailing it to all member's last known address at least fifteen days prior to the election. *See* R. 29 at 9. The statement of reasons also found that the Union had provided notice by mailing the newspaper to its members for the last three election cycles.

Corner argues that the Department's decision was irrational because the newspaper was obsolete and not authorized by the union's members. *See* R. 24 ¶¶ 11-12; R. 31 at 9. Corner also argues that the Department's decision was irrational because it overlooked the incumbent President's statement in the Union's newspaper that "we stopped putting out newspapers several years ago because it was not worth the cost." R. 24 ¶ 15; R. 31 at 9. However, the relevant regulation, 29 C.F.R. § 452.99, merely requires that election notice be "mailed to each member at his last known home address," and permits this notice to be sent on the "front page" of a union's newspaper, 29 C.F.R. § 452.100. Corner has cited no requirement that the newspaper have a regular distribution to satisfy the notice requirement. What is key is that the union members get a notice mailed to them. Whether the Union's newspaper was regularly distributed is irrelevant. The Department's finding that the Union's use of its newspaper to provide election notice was permissible under the regulations was neither arbitrary nor capricious.

### 2. **Favored Incumbents**

The Department found that the Union's newspaper was not used as a tool to campaign by the incumbent officers. *See* R. 24 at 9-10. Courts evaluate a

5

communication's timing, tone and content to determine if a publication promotes a person's candidacy. *See Hudson v. Am. Fed'n of Gov't Employees*, 318 F. Supp. 3d 7, 13 (D.D.C. 2018) ("In evaluating the nature of the statement, courts look to 'the timing, tone, and content' of the publication, as well as any 'general circumstances surrounding' it." (quoting *Chao v. N.J. Area Local Postal Workers Union*, 211 F. Supp. 2d 543, 551 (D.N.J. 2002))); *Herman v. United Auto., Aerospace, Agric. Implement Workers of Am., AFL-CIO, Local 148*, 2001 WL 34047301, at *1 (C.D. Cal. Jan. 10, 2001) ("Even where the language of the newsletter does not explicitly encourage members to vote for one candidate or party, it can be violative of § 481(g) if the overall tone, timing and content attacks one candidate or supports another." (citing *Donovan v. Metropolitan Dist. Council of Carpenters*, 797 F.2d 140, 145 (3d Cir. 1986))). Applying these factors, the Department found that the newspaper: (1) did not promote the incumbent officers; (2) was not critical of any opposing nominees; and (3) did not encourage the reelection of the incumbent officers. R. 24 at 9-10.

Corner disagrees with the Department's findings. She argues that the incumbent officers used the Union's newspaper as a tactic to get their "faces and names" to the union members before the election, and that the incumbents' campaigning in the Union newspaper was subtle. *See* R. 31 at 9-10. She also argues that the timing of the communication shows it was used by the incumbent officers as a tool to campaign. *Id.* at 10.

These arguments amount to mere disagreement with the Department's findings. Such arguments are insufficient to demonstrate that the Department's decision was arbitrary and capricious.

Corner also argues that the Union favored the incumbents by preventing her from contributing an article to the newspaper in violation of 29 U.S.C. 481(c). R. 31 at 10. It is true that the incumbents contributed to the published article used to provide notice on their current union activities, while Corner contributed nothing. And Corner contends that she requested permission to submit an article for the newspaper, citing a reference to her request in a letter a Union official. *See* R. 24 at 15 ("your request of opportunity for all candidates to campaign in the local line is denied"). But that letter shows that Corner did not make her request until after the newspaper was distributed to Union members. *Id*. Furthermore, Corner appears to have hoped to use the newspaper to campaign for election. As previously discussed, the incumbents did not use the newspaper as a campaign tool. Therefore, this letter does not undermine the Department's determination that there was no disparate candidate treatment.

### 3. Unlawful Expenditure

The LMRDA prohibits the use of union funds to promote a candidate for election. 29 U.S.C. 481(g). Corner argues that the newspaper mailing was an unlawful expenditure of union funds in violation of 29 C.F.R. § 452.73 and 29 C.F.R. § 452.74 because the incumbent candidates campaigned through the newspaper. *See* R. 24 ¶¶ 14-16; R. 31 at 9-10. But since the Department's investigation concluded

7

that the incumbent officers did not use the newspaper as a campaign tool, the Department also determined that union funds were not used in violation of the LMRDA through the publication of the newspaper. As discussed, Corner has identified no reason to question the Department's findings on this issue.

### 4. Ineligible Candidates

Finally, Corner argues that the union failed to properly apply election eligibility requirements to two incumbent candidates. R. 31 at 10-13. Section 401(e) of the LMRDA provides that all members in good standing are eligible for office subject to reasonable qualifications uniformly imposed. The Union's constitution provides that members must be in good standing for at least one year prior to nominations. R. 24 at 10. In response to Corner's allegations, the Department investigated whether the two incumbents met these requirements. *Id*. Specifically, the Department reviewed records to confirm that both candidates had been current on their dues in the year prior to their nomination for the election. *Id*.

The Department's investigation revealed that in the year before their nomination, both members had been current on their dues and were in good standing. *Id*. The Department found that the two incumbents' dues were withheld from their paychecks and paid to the American Postal Workers Union (the "APWU"). *Id*. The Department reviewed the APWU's tax statements and determined the Union paid the incumbent candidates' dues to the APWU. *Id*.

Corner disagrees with the factual findings of the Department's investigation. *See* R. 24 ¶¶ 14-16; R. 31 at 10-13. However, this Court must defer to the

8

Department's factual findings. *See Dunlop,* 421 U.S. at 572-73. Corner's challenges to the factual basis of the Department's decision are beyond the scope of this Court's review. *Id*. Additionally, Corner's concern that the records reviewed by the Department were falsified or forged was addressed in the Department's statement of reason. *See* R. 24 at 10. The statement specifically states that the Department did not find any evidence of falsification or forgery of the records it reviewed during its investigation of this allegation. *Id*.

Corner argues that the Department's decision on this matter was arbitrary and capricious because it did not specifically address the bases for her suspicions that the two incumbents had not paid their dues, such as determining who was responsible for withholding the candidates' dues or directly addressing invoices Corner claims show that the incumbent candidates had not paid their dues. R. 31 at 10-13. But the Supreme Court has held that a statement of reasons is not required to make detailed findings of fact. *See Dunlop,* 421 U.S. at 573-74. The statement of reasons "should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Id*. As discussed, the Department investigated and determined that the incumbents had paid their dues for the reasons discussed above. The Department's failure to specifically address Corner's suspicions does not make the Department's statement of reasons arbitrary and capricious.[1]

---

[1] Moreover, the invoices Corner attaches to her complaint to support her claim that the incumbent candidates had not paid their dues, do not show any dues that are past due as of the date of the election. *See* R. 24 at 18-19. Furthermore, even if these

9

**Conclusion**

For the foregoing reasons, the Secretary's motion for summary judgment, R. 28, is granted. Additionally, Corner styled her opposition to the Secretary's motion as a motion. R. 30. That motion is denied, and Corner's case is dismissed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 19, 2018

---

invoices showed balances past due, the invoices are identified only by union member number and not by name. Corner's allegation that these invoices belong to the incumbent candidates at issue here is unsupported.